IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| CASEY LITZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:23-cv-03278-RK |
| | ) |
| NEW PRIME, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Before the Court is Defendant New Prime, Inc.'s motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 36.) The motion is fully briefed. (Docs. 37, 40, 44.) After careful consideration, and for the reasons explained below, the Court **ORDERS** that the motion to dismiss is **GRANTED in part** and **DENIED in part**.

**I.  Background**[1]

On November 2, 2021, Plaintiff Casey Litz was employed by Defendant New Prime, Inc. in its paid training program as she pursued a Commercial Driver's License. (Doc. 39 at ¶¶ 2, 16, 17.) Although she had requested a female driving trainer when she signed up for the training program, New Prime assigned Plaintiff a male training driver, Edwin Reyes. (*Id.* at ¶¶ 17, 18.)

On November 3, 2021, at 3:45 AM, Plaintiff and Mr. Reyes departed from Pennsylvania for a five-hour trip to a Sam's Club in Springfield, Massachusetts. (*Id.* at ¶ 19.) During the drive, Mr. Reyes told Plaintiff about his prior relationships and his sex life, including that he was no longer sexually attracted to his wife. (*Id.* at ¶ 20.) Mr. Reyes also got on a video call with a former female trainee while in the truck cabin with Plaintiff and spoke inappropriately and sexually with the former trainee; he called her his "work wife." (*Id.* at ¶ 21.) After arriving in Springfield and completing the delivery, Plaintiff and Mr. Reyes were required to take a mandatory rest period

---

[1] On February 12, 2024, the Court denied Plaintiff's motion to proceed under a pseudonym and ordered that Plaintiff file an amended complaint that complies with Rule 10(a) of the Federal Rules of Civil Procedure. (Doc. 38.) Plaintiff did so on February 15, 2024. (Doc. 39.) The First Amended Complaint and Second Amended Complaint are functionally identical, with the exception of identifying Plaintiff by name. For ease of reference, the Court refers to the facts cited in the Second Amended Complaint. For purposes of considering Defendant's motion to dismiss, the Court assumes the facts pleaded in Plaintiff's Second Amended Complaint are true. *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010).

before driving back to Pennsylvania. (*Id.* at ¶ 22.) As Plaintiff began to fall asleep in the passenger seat, Mr. Reyes told her to rest in the bottom bunk inside the truck cabin and that he would sleep in the top bunk. (*Id.* at ¶ 23.) Mr. Reyes pulled the curtains shut, and they got into their respective bunks. (*Id.* at ¶ 25.) Shortly thereafter, Mr. Reyes climbed into the bottom bunk with Plaintiff and pushed his erect penis against her through his pants. (*Id.* at ¶ 26.) Plaintiff immediately told him to stop and got out of the truck and went into the store; Plaintiff called both the police and New Prime to report the assault. (*Id.* at ¶¶ 27, 30.) Mr. Reyes followed her and told her that she had to get in the truck because she was his trainee and he had to take her back to Pennsylvania. (*Id.* at ¶ 28.)

When the police arrived, Mr. Reyes admitted that he got into the bunk with Plaintiff and that he was attracted to her and had flirted with her. (*Id.* at ¶ 32.) A New Prime manager told Mr. Reyes to stay away from Plaintiff and arranged a place for Plaintiff to stay for the night. (*Id.* at ¶ 33.) Plaintiff was told that Mr. Reyes was terminated shortly thereafter. (*Id.* at ¶ 34.)

Plaintiff alleges that prior to her assault, New Prime "was on notice that Mr. Reyes had inappropriate sexual relationships with female trainees," and that it "failed to appropriately address the sexual assault." (*Id.* at ¶¶ 36, 37.) Plaintiff filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") on May 2, 2021. (*Id.* at ¶¶ 11, 37.) The EEOC issued a Right to Sue letter on or about June 2, 2023. (*Id.* at ¶ 12; *see* Doc. 40-1.)[2]

On August 30, 2023, Plaintiff filed a complaint asserting common law claims for negligence, negligent infliction of emotional distress, and breach of contract, along with claims for gender/sex discrimination and sexual harassment/hostile work environment under the Missouri Human Rights Act ("MHRA"). (Doc. 1.) Plaintiff attached to the complaint a charge of discrimination directed to the Missouri Commission on Human Rights, the Massachusetts Commission Against Discrimination, and the Pennsylvania Human Relations Commission filed on May 2, 2022. (Doc. 1-2 at 2-3.) Plaintiff also attached the EEOC's Right to Sue Letter and referenced this letter in her complaint, alleging that she properly exhausted administrative remedies by filing a charge of discrimination with state agencies as well as with the EEOC. (Doc. 1 at ¶¶ 8, 9.)

---

[2] The EEOC's Right to Sue letter attached to the initial complaint is was issued on June 1, 2023. (Doc. 1-3.) Plaintiff did not re-attach the EEOC's Right to Sue letter to either of her amended complaints, although she did attach it to her suggestions opposing New Prime's motion to dismiss (Doc. 40-1).

2

New Prime filed a motion to dismiss on January 8, 2024, arguing that Plaintiff failed to administratively exhaust her claims under the MHRA because she had not first obtained a right to sue letter from the Missouri Commission on Human Rights. (Doc. 23.) In response to the motion to dismiss and pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, Plaintiff filed a First Amended Complaint on January 29, 2024. (Doc. 29.) In the First Amended Complaint, Plaintiff asserted the same common law claims and then added employment-discrimination claims arising under Title VII of the Civil Rights Act of 1964 rather than asserting employment discrimination claims under the MHRA. (*See id.*) The Court accordingly denied as moot New Prime's initial motion to dismiss. (Doc. 31.)

## II. Legal Standard

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole*, 599 F.3d at 861 (quotation marks and citation omitted). In doing so, however, the Court is not bound to accept as true "legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (citation omitted).

## III. Discussion

New Prime argues that (1) Plaintiff's claims under Title VII are untimely and are barred by the 90-day statute of limitations, and (2) Plaintiff's common law claims are preempted by the MHRA. The Court addresses each argument in turn below.

### A. Title VII Claims

New Prime argues first that Plaintiff's claims for employment discrimination under Title VII are untimely and are barred under the 90-day statute of limitations.

Under 42 U.S.C. § 2000e-5(f)(1), a plaintiff must file a civil action within 90 days "after the giving of" a notice of right to sue. The Eighth Circuit has generally construed the statute of limitations contained in § 2000e-5(f)(1) as beginning to run when a plaintiff "receives notice of the right to sue." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994); *see*

*Young v. Waynesville R-VI Sch. Dist.*, No. 6:12-CV-03443-BCW, 2013 WL 209125, at *1 (W.D. Mo. Jan. 17, 2013) ("A plaintiff seeking to file a lawsuit under Title VII must file it within ninety (90) days of receiving the right to sue letter.").

Here, the EEOC issued a Right to Sue letter on or around June 2, 2023. Plaintiff filed her initial complaint within the 90-day window on August 30, 2023. Nonetheless, New Prime emphasizes that the initial complaint did not assert any claims under Title VII, but instead only asserted employment discrimination claims under state law, i.e., the MHRA. New Prime argues that as a result, Plaintiff's Title VII claims asserted for the first time on January 29, 2024, with the First Amended Complaint, are necessarily time-barred. Plaintiff argues that the Title VII claims are not time-barred because the First (and Second) Amended Complaint relates back to the initial complaint under Rule 15(c) of the Federal Rules of Civil Procedure for purposes of the statute of limitations.

Rule 15(c) codifies the "relation back" doctrine. Under this provision of the federal civil procedure rules, an amended pleading "relates back to the date of the original pleading"—thus avoiding a potential time-bar, for example—when "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Rule 15(c)(1)(B). As the Eighth Circuit has recognized, the touchstone for the relation-back doctrine codified in Rule 15(c) is notice. *Maegdlin v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 949*, 309 F.3d 1051, 1052 (8th Cir. 2002) (recognizing that "[t]he rationale behind Rule 15(c)(2) is that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that the statute of limitations were intended to provide'") (quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 n.3 (1984)). Indeed, the Eighth Circuit has held that Rule 15(c) must be "liberally construed" in light of the rule's principal purpose, which is "to permit cases to be decided on their merits." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1543 (8th Cir. 1996) (citing *Gridley v. Cunningham*, 550 F.2d 551, 553 (8th Cir. 1977)).

To relate back to the original pleading, the critical question is whether the amended complaint "is related to the general factual situation alleged in the original pleading." *Id.* (citation omitted). Thus, the Eighth Circuit has squarely held that an amended complaint may relate back to the original pleading even if it adds or changes the legal theory under which the plaintiff seeks relief so long as the new claim (or the new legal theory of liability) arises out of the same conduct, transaction, or occurrence. *See Maegdlin*, 309 F.3d at 1053 ("a change in legal theory is not fatal

4

to the rule's application" because "[i]t is the facts well pleaded, not the theory of recovery or legal conclusions, that state a cause of action and put a party on notice") (citations and quotation marks omitted); *Alpern*, 550 F.2d at 1543 (recognizing that "relation back has been permitted of amendments that change the legal theory of the action") (citing *Donnelly v. Yellow Freight Sys., Inc.*, 874 F.2d 402 (7th Cir. 1989)). There is little question here—and New Prime does not meaningfully attempt to argue otherwise—that the Title VII claims arise from the same conduct, transaction, and occurrence as set out in the initial complaint. Relying on the same factual assertions, Plaintiff changed the legal theory of her claims for discrimination from state-law claims arising under the MHRA to federal-law claims arising under Title VII.

New Prime argues that Plaintiff is not entitled to the protection of Rule 15(c)(2)'s relation back doctrine because the MHRA claims asserted in the initial complaint were necessarily meritless and barred under state law because Plaintiff had not received a right to sue letter from the Missouri Commission on Human Rights prior to asserting claims under the MHRA. New Prime argues that the initial complaint was therefore a "nullity" to which the First (and Second) Amended Complaint cannot relate back to. New Prime cites an "overabundance of case law . . . that an amended pleading does not relate back under Rule 15(c) to the date of an earlier pleading that alleged only invalid claims." (Doc. 37 at 11.) The Court does not read the case law cited by New Prime as standing for this broad proposition, however.

A review of all the cases cited by New Prime reveals at best a well-established majority rule that a subsequent complaint cannot relate back (and therefore be saved from an otherwise applicable statute of limitations bar) to *an initial complaint that is itself untimely*.[3] New Prime does not cite any case law which holds that for purposes of the relation back doctrine an initial complaint is a nullity and cannot provide a foundation for a subsequent complaint to relate back to if the initial complaint is meritless or otherwise deficient on any other basis than the statute of

---

[3] *Smith v. Salon*, No. 18-2532 (TJK), 2020 WL 1429939, at *3 (D.D.C. Mar. 24, 2020); *Norman v. Massey Enterprises*, No. 1:17 CV 194 SNLJ, 2019 WL 2357360, at *1-2 (E.D. Mo. June 4, 2019); *Miley v. Doe*, No. 18-355-JWD-RLB, 2018 WL 6599112, at *4 (M.D. La. Oct. 5, 2018); *Rinallo v. Capsa Solutions, LLC*, No. 3:16-CV-00678-BR, 2017 WL 1137448, at *4 (D. Ore. Mar. 27, 2017); *Snyder v. Village of Midlothian*, 302 F.R.D. 231, 240 (N.D. Ill. 2014) *Boggs v. 3M Co.*, No. 11-57-ART, 2012 WL 3644967, at *11 (E.D. Ky. Aug. 24, 2012); *Beeker v. Advanced Technology Services*, No. C/A 6:08-cv-03045-GRA-BHH, 2009 WL 10678019, at *1 (D.S.C. May 27, 2009); *Jones v. Motley*, No. 07-111-HRW, 2009 WL 1458209, at *4 (E.D. Ky. May 26, 2009); *Shultz v. Otawwa Cnty. Sheriff's Dep't*, No. 07-CV-570-GKF-PJC, 2008 WL 2510124, at *5-6 (N.D. Okla. June 19, 2008).

5

limitations applicable to the initial complaint. New Prime does not argue that Plaintiff's complaint under the MHRA was untimely under the statute of limitations.[4]

Because Plaintiff's Title VII claims arise from the same conduct, transaction, or occurrence as the MHRA claims asserted in the initial complaint to the extent Plaintiff relies on the same factual allegations and underpinnings to assert her Title VII employment discrimination claims, and because the initial complaint is not itself barred by the applicable statute of limitations, the Court is persuaded that Plaintiff is entitled to the protection of Rule 15(c)'s relation back doctrine. As a result, the Court finds that Plaintiff's Title VII claims are not time-barred under § 2000e-5(f)(1). New Prime's motion to dismiss Plaintiff's Title VII claims is denied.

### B. Common Law Claims

Second, New Prime argues that Plaintiff's common law claims asserted in Counts 1-3 for negligent hiring/retention, negligent supervision, and negligent training, and Count 6 for breach of contract are preempted under the MHRA.

The MHRA preempts common law claims (including breach of contract) that "arise out of the employment relationship." *Johnson v. Midwest Div.-RBH, LLC*, 88 F.4th 731, 736 (8th Cir. 2023); *see Winfrey v. Ford Motor Co.*, No. 4:19-CV-00889-DGK, 2020 WL 1558117, at *2 (W.D. Mo. Apr. 1, 2020) (dismissing claims for breach of contract, negligence, and intentional infliction of emotional distress because the claims "arise out of an employment relationship"); Mo. Rev. Stat. § 213.070.2 (providing that the MHRA "shall provide the exclusive remedy for any and all claims for injury or damages arising out of an employment relationship"). The Missouri legislature added the exclusivity provision within the MHRA in 2017. S.B. No. 43, 99th Gen. Assemb., Reg. Sess. (Mo. 2017). Even before the legislature did so, the Missouri Supreme Court had held that the MHRA "supersedes and displaces" common law claims to the extent "the remedies available to the plaintiff [at common law] are fully provided for by the MHRA." *State ex rel. Church & Dwight Co. v. Collins*, 543 S.W.3d 22, 27 (Mo. banc 2018).

---

[4] The Court recognizes New Prime's argument by analogy that to the extent Plaintiff had not received a right to sue letter from the Missouri Commission on Human Rights prior to asserting her MHRA claims, her premature claim is functionally no different than had she filed the MHRA claims outside the statute of limitations period. For purposes of relation back under Rule 15(c), however, New Prime has not pointed to—and the Court is not aware of—any case that considers the merits of claims asserted in an initial complaint other than whether the initial complaint was itself barred by the statute of limitations. Under the circumstances here, Rule 15(c) and the relation back doctrine concerns the timeliness of claims asserted, nothing more.

6

The Court finds that Plaintiff's common law claims for negligent hiring/retention, negligent supervision, negligent training, and breach of contract are preempted by the MHRA. Each claim is based on the same facts as her claim for employment discrimination claims (initially asserted under the MHRA and now asserted under Title VII), and there are no remedies that would be available to Plaintiff under her common law claims that are not already available under the MHRA. *See Coats v. Kraft Heinz Foods Co.*, No. 2:21-cv-4159-MDH, 2021 WL 5889980, at *5 (W.D. Mo. Dec. 13, 2021); *Parsons v. Heartland Reg'l Med. Ctr.*, No. 18-06164-CV-W-RK, 2019 WL 3307061, at *5 (W.D. Mo. July 23, 2019).[5] New Prime's motion to dismiss Plaintiff's common law claims is granted.

## Conclusion

Accordingly, after careful consideration and review, the Court **ORDERS** that Defendant New Prime's motion to dismiss (Doc. 36) is **GRANTED in part** and **DENIED in part**. Specifically, the motion to dismiss is **GRANTED** as to Counts 1-3 and 6, which are **DISMISSED with prejudice** because they are preempted under the MHRA. The motion to dismiss is **DENIED** as to Counts 4 and 5, asserting claims under Title VII.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: May 7, 2024

---

[5] Plaintiff argues that her common law claims are not preempted under the MHRA to the extent they are premised on an assault, which is not understood under Missouri law to arise out of an employee's employment. Plaintiff primarily relies on two cases in support: *Smith v. Ford Motor Co.*, No. 89-0962-CV-W-6, 1990 WL 301520 (W.D. Mo. Mar. 17, 1990) (citing *Pryor v. U.S. Gypsum*, 585 F. Supp. 311, 316 (W.D. Mo. 1984)). These cases are distinguishable, however. In *Smith* and *Pryor*, the district court declined to dismiss common law tort claims premised on a workplace assault brought by an employee against their employer based on the exclusivity of the Missouri Workers' Compensation Law. Importantly, though, in each instance the district court declined to dismiss common law claims against the employer for *intentional* torts, not negligence or breach of contract as Plaintiff asserts here. *See Smith*, 1990 WL 301520, at *2; *Pryor*, 585 F. Supp. at 317; *see also Massey v. Victor L. Phillips Co.*, 827 F. Supp. 597, 598-99 (W.D. Mo. 1993) (explaining that "[t]he result in *Pryor* followed from a line of Missouri cases . . . which indicated that plaintiffs might be able to sidestep the reach of workers' compensation if they alleged common law claims that impose tort liability against employers from intentionally inflicting injury") (citations omitted). Moreover, as the district court recognized in *Massey*, under Missouri law, the Labor and Industrial Relations Commission has exclusive jurisdiction to determine whether the workers' compensation law applies to a claimed injury. 827 F. Supp. at 599 (citing *Killian v. J&J Installers, Inc.*, 802 S.W.2d 158, 160-61 (Mo. banc 1991); *Yount v. Davis*, 846 S.W.2d 780, 783 (Mo. Ct. App. 1993); *Hill v. John Chezik Imports*, 797 S.W.2d 528, 531 (Mo. Ct. App. 1990)).